UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | No. 21-cr-537 (JMC) |
| ) | |
| STEPHEN CHASE RANDOLPH, ) | |
| ) | |
| Defendant. ) | |

**ORDER**

**AND NOW**, this _____ day of _____, 202_, upon consideration of Defendant's Motion to Dismiss Count One of the Indictment, the response thereto, and a hearing, it is hereby **ORDERED** that Defendant's Motion is **GRANTED**.

**SO ORDERED.**

Date: _____                                    _____
                                                                                    JIA M. COBB
                                                                                    United States District Judge

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | No. 21-cr-537 (JMC) |
| | ) | |
| STEPHEN CHASE RANDOLPH, | ) | |
| | ) | Hearing Requested |
| Defendant. | ) | |

**STEPHEN RANDOLPH'S MOTION TO DISMISS COUNT ONE OF THE INDICTMENT AND MEMORANDUM OF LAW IN SUPPORT**

Defendant, Stephen Randolph, by and through his undersigned counsel, hereby respectfully moves the Court to dismiss Count One of the Indictment, which alleges violation of 18 U.S.C. § 231(a)(3). Mr. Randolph submits the following memorandum of law in support of his motion to dismiss Count One.

**I.   INTRODUCTION**

A 14-Count Indictment was returned against Stephen Randolph and his co-defendants on or about January 12, 2022. Among other alleged violations, the Grand Jury charged Mr. Randolph with violation of 18 U.S.C. § 231(a)(3). Trial in this matter is scheduled to begin March 6, 2023, and pursuant to the Court's Scheduling Order, pretrial motions are due on October 28, 2022. This Indictment is not the first returned against Mr. Randolph. A nine-count Indictment was first returned against him and co-defendant Paul Johnson on or about April 30, 2021, in a separate criminal matter, number 21-332. Subsequently, in that same criminal matter, a nine-count Superseding Indictment was returned on or about December 1, 2021. For reasons unclear to Mr. Randolph, the government chose to seek yet another Indictment against him. On or about January 12, 2022, in this instant criminal matter, the above-described 14-count

2

Indictment was returned, effectively joining Mr. Randolph and Mr. Johnson with an existing case pending against Mr. Samsel and Mr. Grant. Mr. Randolph does not know any of his co-defendants, and to his knowledge, none of his

co-defendants knew each other as of January 6, 2021. All three versions of the Indictments against Mr. Randolph alleged a violation of 18 U.S.C. 231(a)(3) in almost identical charging language.

Mr. Randolph brings this motion pursuant to Federal Rules of Criminal Procedure 7(c)(1) and 12(b)(3)(B), and the Due Process Clause of the Fifth Amendment of the United States Constitution. He seeks a hearing on the merits of the instant Motion to Dismiss.

## II. LEGAL ARGUMENT

Count One of the Indictment alleges a violation of 18 U.S.C. § 231 (a)(3). That count of, in its entirety, charges as follows:

> On or about January 6, 2021, within the District of Columbia, Ryan Samsel, James Tate Grant, Paul Russell Johnson, Stephen Chase Randolph, and Jason Benjamin Blythe, along with others known and unknown to the Grand Jury, committed and attempted to commit an act to obstruct, impede, and interfere with law enforcement officers, that is, Officer, C.E. and Officer D.C. and other officers from the United States Capitol Police Department, lawfully engaged in the lawful performance of their official duties incident to and during commission of a civil disorder, which in any way and degree obstructed, delayed, and adversely affected commerce and the movement of any article and commodity in commerce and the conduct and performance of any federally protected function.

With the exception of the date, location, defendants' names, and Officers' initials, the entirety of count one nearly identically parrots the language of the statute, which provides in relevant part

> [w]however commits or attempts to commit any act to obstruct, impede, or interfere with any fireman or law enforcement officer lawfully engaged in the lawful performance of his official duties

3

> incident to and during the commission of a civil disorder which in any way or degree obstructs, delays, or adversely affects commerce or the movement of any article or commodity in commerce or the conduct or performance of any federally protected function . . .

18 U.S.C. § 231(a)(3).

With respect to Count One, the Grand Jury did not allege any additional facts or circumstances beyond the language of the statute itself.

### A. Count One Must Be Dismissed Because It Does Not Allege Essential Facts Constituting the Offense Charged.

The Sixth Amendment guarantees a criminal defendant "the right . . . to be informed of the nature and the cause of the accusation.[]" Moreover, Federal Rule of Criminal Procedure 7(c)(1) states, in part, that the "indictment or information must be a plain, concise, and definite written statement of the essential facts constituting the offense charged . . ." A defendant may raise by pretrial motion "any defense, objection, or request that the Court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(3)(B). Rule 12 also provides that a defendant may move to dismiss the Indictment for "failure to state an offense" and "lack of specificity." *Id.* at (b)(3)(B)(iii), (v). In determining a motion to dismiss pursuant to Rule 12, the Court is "bound to accept the facts stated in the indictment as true." *United States v. Syring*, 552 F. Supp.2d 125, 128 (D.D.C. 2007); *United States v. Sampson,* 371 U.S. 75, 78 (1962). Mr. Randolph acknowledges that the Court cannot consider facts beyond "the four corners of the indictment." *See United States v. Ring*, 628 F.Supp.2d 195, 204 (D.D.C. 2009)(internal quotations omitted). Because the indictment lacks specificity and fails to adequately inform Mr. Randolph of the nature and cause of the accusation as required by the Sixth Amendment of the U.S. Constitution and Rule 7(c), Count One must be dismissed.

An indictment will only withstand a challenge to its sufficiency if it "first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *See Hamling v. U.S.,* 418 U.S. 87, 117 (1974). The second requirement is grounded in the guarantee of the Sixth Amendment that "[i]n all criminal proceedings, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation[.]" *See Russell v. U.S.*, 39 U.S. 749, 763 (1962)(quoting U.S. Const., amend. VI). However, an indictment will not satisfy those requirements by merely parroting the language of the statute alleged to have been violated. The indictment must "sufficiently apprise[] the defendant of what he must be prepared to meet." *Id.*

The *Russell* Court explained that "[i]t is an elementary principle of criminal pleading, that where the definition of an offense, whether it be at common law or by statute, includes generic terms, it is not sufficient that the indictment shall charge the offense in the same generic terms as in the definition; but it must state the species, — it must descend to particulars." *Id.* at 765 (quoting *U.S. v. Cruishank*, 92 U.S. 542, 558 (1875)). The D.C. Circuit has also stressed that although "[t]he generally applicable rule is that the indictment may use the language of the statute[,] that language must be supplemented with enough detail to apprise the accused of the particular offense with which he is charged." *U.S. v. Conlon*, 628 F.2d 150, 155 (D.C. Cir. 1980).

In *Russell*, the defendants were charged with violating 2 U.S.C. § 192, which prohibited any person who was summoned as a witness before Congress from refusing to answer "any question pertinent to the question under inquiry." *Russell*, 39 U.S. at 751. Because the indictment failed to allege facts that put the defendants on notice as to what the subject of the

5

inquiry was, the indictment was constitutionally deficient. *Id.* at 766. Furthermore, the Court articulated that "[w]hat the subject actually was, therefore, is central to every prosecution under the statute. Where guilt depends so crucially upon such a specific identification of fact, our cases have uniformly held that an indictment must do more than simply repeat the language of the criminal statute." *Id.* at 764.

In *U.S. v. Murphy*, the defendant was charged with violation 18 U.S.C. § 1512(a)(1), which prohibited, among other things, threatening another person "with intent to influence the testimony of any person in an official proceeding." 72 F.2d 1151, 1153 (1st Cir. 1985). The First Circuit held that the indictment was insufficient because it did not identify any proceeding in which the defendants were allegedly attempting to influence a witness's testimony. *Id.* at 1154. "Crucial to preparation of any defense to a charge under the statute is at least some indication of the identity of the proceeding in which the defendant tried to influence testimony." *Id.*

Here, there can be no question that Count One merely "parrots" the exact language of the statute. By its plain text, § 231(a)(3) requires the government allege at least three elements:

1) a "civil disorder" existed at the time of the defendant's alleged conduct;
2) that civil disorder "in any way or degree obstruct[ed], delay[ed], or adversely affect[ed] commerce or the movement of any article or commodity in commerce or the conduct and performance of any federally protected function;

3) that one or more "law enforcement officers" were lawfully engaged in the lawful performance of their official duties incident to and during the commission of that civil disorder.[1]

The government must prove not only that a "civil disorder"[2] existed, but also that it took one of the three forms enumerated in subsection (3). In that subsection, Congress made three types of "civil disorders" cognizable: (1) one that "obstruct[ed], delay[ed], or adversely affect[ed] commerce;" (2) one that "obstruct[ed], delay[ed], or adversely affect[ed] . . . the movement of any article or commodity in commerce;" or (3) one that "obstruct[ed], delay[ed], or adversely affect[ed] . . . the conduct or performance of any federally protected function." *See United States v. Mostofsky*, Crim. No. 21-cr-138 (JEB), 2021 WL 6049891 at *3 (D.D.C. Dec. 21, 2021)(Government could seek to obtain a conviction at trial "via the federally protected function prong" by proving a "civil disorder" that "obstructed, delayed, or adversely affected a federally protected function" (alteration adopted)(internal quotation marks omitted)); *see also, United States v. Phomma,* Crim. No. 20-cr-465-JO, 2021 WL 419961, at *4 (D. Ore. Sept. 15, 2021)(Section 231(a)(3) concerns "civil disorders" that affect interstate commerce"). For purposes of §231(a)(3), "commerce" includes commerce across State or D.C. lines, between two

---

[1] For a conviction under § 231(a)(3), Courts routinely require the government to prove an additional, fourth element: that the defendant knowingly committed or attempted to commit an act with the specific intent to obstruct, impede, or interfere with those officers. *See*, *e.g., United States v. Rupert,* Case No. 20-cr-104 (NEB/TNL), 2021 WL 1341632, at *16 (D. Minn. Jan. 6 2021)(listing elements based on *United States v. Casper,* 541 F.2d 1275, 1276 (8th Cir. 1976)(per curiam)); Final Jury Instructions, *United States v. Reffitt*, Crim. No. 21-cr-32 (D.D.C. Mar. 7, 2022), ECF No. 119, at 32 (similar articulation of elements in different order).

[2] 18 U.S.C. § 232(1) defines a "civil disorder" as "any public disturbance involving acts of violence by assemblages of three or more persons, which causes an immediate danger of or results in damage or injury to the property or person of any other individual."

points within a State or D.C. but involving interstate travel, or "wholly within the District of Columbia." 18 U.S.C. § 232(2).

The entire indictment is devoid of any factual assertions or allegations that sufficiently apprise Mr. Randolph of the nature of the accusation against him as it pertains to each of the three elements codified in §231(a)(3). Arguably, the insertion of Officers C.E. and D.C.'s initials satisfies specificity with respect to the third prong; however, the indictment is devoid of any precise facts alleged to satisfy the specificity requriements for any other prong. Count One must be dismissed.

### B. Count One Must Be Dismissed Because Section 231(a)(3) is Unconstitutionally Vague.

"The prohibition of vagueness in criminal statutes 'is a well-recognized requirement, consonant alike with ordinary notions of fair play and the settled rules of law,' and a statute that flouts it 'violates the first essential of due process.'" *Johnson v. United States,* 576 U.S. 591, 595 (2015)(quoting *Connally v. General Constr. Co.,* 269 U.S. 385, 391 (1926)). As the Supreme Court has explained,

> [i]t is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined. Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application. Third, but related, where a vague statute abuts upon sensitive areas of basic First Amendment freedoms, it operates to inhibit the exercise of those freedoms.

*Grayned v. City of Rockford,* 408 U.S. 104, 108 (1972)(internal citations and quotations omitted).  As the *Grayned* Court articulated, vagueness concerns are most acute when the statute imposes criminal penalties and implicates the First Amendment by chilling exercise of protected expression.  *See Kolender v. Lawson,* 461 U.S. 352, 358-59, n. 8 (1983); *see also, Smith v. Goguen,*, 415 U.S. 566, 573 (1974)(Where "a statute's literal scope [reaches] expression sheltered by the First Amendment, the [vagueness] doctrine demands a greater degree of specificity than in other contexts.").

Section 231(a)(3) is replete with vague and imprecise terms that fail to provide a person of ordinary intelligence a reasonable opportunity to know what conduct is prohibited.  First, by penalizing "any act to obstruct, impede, or interfere," §231(a)(3) reaches the outer limits of verbal and expressive conduct without drawing any distinction that could exclude acts undertaken merely to convey a message or symbolic content.  *See Roy v. City of Monroe*, 950 F.3d 245, 252 (5th Cir. 2020)(acknowledging that "[s]tanding alone . . . a prohibition on 'any act [undertaken] in such manner as to disturb or alarm the public' fails meaningfully to guide the police and thus poses a substantial risk of arbitrary or discriminatory enforcement.") (quoting *Louisiana v. Cox*, 379 U.S. 536, 551-52 (1965)).  The phrase "any act to obstruct, impede, or interfere" can fairly include within its plain meaning such diverse acts as pure speech, expressive conduct, association, minimal jostling, or even grievous, violent assaults.

Additionally, the phrase "incident to and during the commission of a civil disorder" is also problematic for its vagueness.  As defined by section 232(1), "civil disorder" is far-reaching, applying to any "public disturbance involving acts of violence by assemblages of three or more persons, which causes an immediate danger of . . . injury to the property."  *Id.*  This definition offers no limitation to solve the vagueness problem because it could apply to virtually any

tumultuous or rowdy public gathering to which police might be called, not just largescale protests or riots. Equally problematic, there is no indication within the statute whether the defendant is required to have participated in the civil disorder, or if it is sufficient that he or she be in the general vicinity of the event.

Lastly, the absence of a scienter/*mens rea* element in section 231(a)(3) weighs in further favor of the statute's unconstitutionality. Because the statute omits an express *mens rea* requirement, it is left to police, prosecutors, and judges to decide whether the statute requires knowledge or specific intent or neither.

By enacting a statute with such imprecise language, Congress created "a criminal prohibition of alarming breadth." *See United States v. Stevens*, 559 U.S. 460, 474 (2010). "Vague statutes threaten to hand responsibility for defining crimes to relatively unaccountable police, prosecutors, and judges, eroding the people's ability to oversee the creation of the laws they are expected to abide." *United States v. Davis,* 139 S.Ct. 2319, 2325 (2019). Section 231(a)(3)'s scope "may entirely depend" on a law enforcement official's unbounded speculation about subjective factors, *Coates v. Cincinnati,* 402 U.S. 611, 614 (1971), thus subjecting "individuals to the risk of arbitrary or discriminatory prosecution and conviction." *United States v. Kozminski*, 487 U.S. 949-50 (1988)(holding statute unconstitutionally vague where liability "depend[ed] entirely upon the victim's state of mind").

In *Houston v. Hill*, 482 U.S. 451 (1987), the Supreme Court declared unconstitutional a municipal ordinance that made it unlawful to interrupt a police officer in the performance of his or her duties, finding that the ordinance's sweeping nature was neither "inevitable" nor "essential to maintain public order." 482 U.S. at 464. Because the ordinance was "not narrowly tailored to prohibit only disorderly conduct or fighting words," it wrongly gave police "unfettered discretion

to arrest individuals for words or conduct that annoy or offend them." *Id.* at 465. Similarly, here, section 231(a)(3) is overly broad and potentially reaches innocent conduct, in part, by expansively encompassing "any act" that could interfere with the duties of a law enforcement officer during a civil disorder. Moreover, the statute does not weed out those acts with protected expressive content or those that occur in a traditional public forum.

"In the First Amendment context, . . . a law may be invalidated as overbroad if 'a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep.'" *United States v. Stevens,* 559 U.S. 460, 473 (2010)(quotations omitted). The First Amendment protects expressive conduct like cross-burning, flag-burning, and assembly in inconvenient places. *See, e.g., Virginia v. Black*, 538 U.S. 343, 365-66 (2003); *Texas v. Johnson*, 491 U.S. 397, 405-06 (1989); *Clark v. Cmte. For Creative Non-Violence*, 468 U.S. 288, 293 (1984). Conduct is considered expressive, and therefore protected, under the First Amendment when it "is intended to convey a 'particularized message' and the likelihood is great that the message would be so understood." *Knox v. Brnovich*, 907 F.3d 1167, 1181 (9th Cir. 2018)(quotations omitted).

The plain language of 18 U.S.C. § 231(a)(3) is at odds with the protections of the First Amendment, which does not permit an unqualified prohibition on "interference" with police duties because "the freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state." *Hill*, 482 U.S. at 462; *see also, McCoy v. City of Columbia,* 929 F. Supp. 2d 541, 550 (D.S.C. 2013)(invalidating a state statute for overbreadth that made it unlawful "for any person to interfere with or molest a police officer in the lawful discharge of his duties.").

Such broad criminal statutes like section 231(a)(3) must "be scrutinized with particular care." *Hill,* 482 at 459; *see also Winters v. New York,* 333 U.S. 507, 515 (1948). Criminal laws that "make unlawful a substantial amount of constitutionally protected conduct may be held facially invalid even if they also have legitimate application. *Id.* 18 U.S.C. §231(a)(3) extends to a substantial amount of constitutionally protected speech and expressive conduct, well in excess of the law's legitimate sweep.

### III.   CONCLUSION

Wherefore, for the reasons set forth more fully above, and any other reasons that may appear just and proper, Mr. Randolph respectfully requests the Court grant his motion and dismiss Count One of the Indictment. Mr. Randolph, through counsel, requests a hearing on this motion.

Respectfully submitted,

_____/s/ Angela Halim_____
Angela Halim, Esq.,
3580 Indian Queen Lane
Suite 10A
Philadelphia, PA  19129
(215) 300-3229
angiehalim@gmail.com

## **CERTIFICATE OF SERVICE**

     I hereby certify that on this date, I electronically filed the foregoing with the Clerk of Court using CM/ECF.  I also certify that the foregoing is being served this day on all counsel of record, via transmission of Notices of Electronic Filing generated by CM/ECF.


                                                                                                     /s/ Angela Halim
                                                                                          Angela Halim, Esq.

Dated:  October 28, 2022