UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| v. | : | No. 21-cr-537 (JMC) |
| STEPHEN CHASE RANDOLPH, | : | |
| Defendant. | : | |

**STEPHEN CHASE RANDOLPH'S BRIEF IN SUPPORT OF ORAL MOTION TO CONTINUE BOND PENDING SENTENCING**

The Bail Reform Act is not designed to be punitive, and it serves neither the ends of justice nor the public interest to detain Mr. Randolph pending his sentencing hearing. In fact, as discussed in greater detail below, to detain him at this juncture, given a combination of personal factors and unique circumstances, would operate as a premature punitive measure. For all the reasons set forth below, Mr. Randolph urges the Court to exercise its discretion and deny the government's request that he be detained pending sentencing. He respectfully moves the Court to continue his bond conditions pending his sentencing hearing.

**I.    BACKGROUND**

Stephen Randolph lives in Harrodsburg, Kentucky; he is 34 years old, recently married to his girlfriend of nearly ten years, and he helps care for his father-in-law who suffers from Stage Four pancreatic cancer. He has no significant criminal history and no history of violent conduct whatsoever. With the exception of a brief period of time in his 20's, Mr. Randolph has lived his entire life in rural Kentucky. His entire social and support network lives in close proximity to him in rural Kentucky. Mr. Randolph's mother-in-law and father-in-law stand at the ready to be character witnesses on Mr. Randolph's behalf, and, having known him closely for nearly ten years, they can attest to his peaceful, caretaking, and non-violent nature.

When he decided to attend a rally and hear the former president speak in Washington D.C. on January 6, 2021, Mr. Randolph had no obstructive intent and he had no way of knowing what that day would ultimately become. The conduct that forms the basis of his convictions lasted for a minute, at most, and is, without question, aberrant behavior never again to be repeated. Mr. Randolph has been a caregiver most of his life, helping his grandmother when she was dying from liver cancer, serving as a certified nursing assistant, living with and caring for his wife's grandmother for seven years until she passed way at the age of 102, and now helping to care for his 81-year old father-in-law as he suffers from cancer and diabetes. As the Court knows, Mr. Randolph has been on pretrial release for nearly three years at this point, and he has – at all times – been 100% compliant with his conditions of bond.

Mr. Randolph helps to drive his father-in-law to chemotherapy appointments, to drain fluid from his lungs, to check his glucose levels and administer insulin, if necessary; Mr. Randolph also helps him move around and provides company. There are times when no one other than Mr. Randolph is available to provide care and attention to his father-in-law.

There can be no question that the events of January 6, 2021, are unique and not likely ever to be replicated. Mr. Randolph travelled from many states away, not to commit a crime, but to exercise his constitutional rights and to hear the former president speak - a once in a lifetime opportunity for him. There were far bigger and more powerful forces at play than Mr. Randolph, a lone citizen who arrived in D.C. with no criminal intent and no harm in his heart, when the crowd reached that fateful tipping point. Those facts, alone, give rise to unique, exceptional reasons that render Mr. Randolph's detention inappropriate in this case.

II.     **LEGAL ARGUMENT**

Following a conviction for a "crime of violence," the Court shall order detention pending sentencing unless certain exceptions apply.  *See* 18 U.S.C. § 3143(a)(2).  Mr. Randolph will assume, *arguendo*, that his conviction on Count Two (18 U.S.C. § 111(b)) qualifies as a crime of violence for purposes of this motion; however, he makes clear that he does not concede that §111(b) is categorically a crime of violence, and, if relevant, he may argue on appeal that his conviction on Count Two is not, in fact, a crime of violence.  Mr. Randolph respectfully submits that the "escape hatch" set forth at 18 U.S.C. § 3145(c) permits him to remain on bond pending sentencing.[1]

The Court has the authority to continue Mr. Randolph's bond conditions pending sentencing if the Court finds there are "exceptional reasons" why detention would be inappropriate and if the Court finds by clear and convincing evidence that he is not likely to flee or pose a danger.  The government will not be able to point to a single factor that would indicate either a likelihood to flee or danger to the community.  To the extent the Court has any concern at all in either regard, Mr. Randolph posits that his conditions could be modified to something more restrictive, such as location monitoring or a more restrictive curfew.

Unfortunately, the statute does not define "exceptional reasons" and a review of case law addressing the term does little to precisely define what, exactly, constitutes exceptional reasons.  What is clear from reviewing available case law, however, is that the determination must be

---

[1] Once he receives the Court's findings of fact and/or conclusions of law, Mr. Randolph may argue that he qualifies for the exception set forth at 18 U.S.C. § 3143(a)(2)(A)(i) and (B).  Detention is not mandatory where the Court finds "there is a substantial likelihood that a motion for acquittal or new trial will be granted" and where there is also a finding by clear and convincing evidence that Mr. Randolph is not likely to flee or pose a danger to any other person or the community.  Mr. Randolph reserves the right to supplement his motion to remain on bond pending sentencing once he receives and reviews the Court's specific findings.

3

made on a case-by-case basis and § 3145(c) was intended to provide "an avenue of relief" from the mandatory provisions of the Bail Reform Act.  *See, e.g., United States v. DiSomma*, 951 F.2d 494 (2d Cir. 1991); *United States v. Herrera-Soto*, 961 F.2d 645 (7th Cir. 1992); *United States v. Price*, 618 F.Supp.2d 473 (W.D.N.C. 2008).  Moreover, a "wide range of factors may bear upon the [§ 3145(c)] analysis," and a district court has "broad discretion . . . to consider all the particular circumstances of the case before it and [to] draw upon its broad 'experience with the mainsprings of human conduct.'"  *United States v. Harris*, 451 F.Supp.3d 64, 71 (D.D.C. 2020)(citations omitted).  The statute provides district courts with "considerable discretion" and does not preclude releasing a defendant based on "purely personal circumstances."  *United States v. Kaquatosh*, 252 F.Supp.2d 775, 778 (E.D. Wisc. 2003).  The statute permits the Court to continue Mr. Randolph's bond conditions so long as the Court finds that his situation is sufficiently unique to make detention pending sentencing inappropriate.

Aberrant conduct, in and of itself, may be sufficient to find "exceptional reason[]" exists to justify release pursuant to § 3145(c).  *See, e.g., United States v. Garcia*, 340 F.3d 1013, 1019 (9th Cir. 2003)("an exceptional circumstance that might justify release under § 3145(c) would be that the defendant's criminal conduct was aberrational").  Certainly aberrant behavior combined with Mr. Randolph's perfect compliance with restrictive conditions of pretrial release for nearly three years, insignificant criminal history, and a lifetime of caregiving and peaceful conduct is sufficient for the Court to find that exceptional reasons exist to continue bond.  *See, e.g., United States v. Syzmanski*, No. 3:08 CR 417, 2009 WL 1212249, at *2 (N.D. Ohio Apr. 30, 2009) (granting bond pending appeal and finding exceptional circumstances based in part on the aberrational nature of the criminal conduct, coupled with pretrial compliance and history of being a "good citizen."); *United States v. Mutte*, 383 F. App'x 716, 717 (10th Cir. 2010)

(unpublished) (upholding district court's finding of exceptional circumstances where defendant was convicted of assault causing serious bodily injury, had been compliant with all conditions of release for approximately three years and the criminal act was aberrant, among other factors); *United States v. Cantrell*, 888 F. Supp. 1055, 1057–58 (D. Nev. 1995) (finding the nature of the assault made the defendant "a very unlikely threat to cause any harm to the community pending his sentencing" and a factor that supported a finding of exceptional circumstances); *United States v. DiMattina*, 885 F. Supp. 2d 572, 589 (E.D.N.Y. 2012) (relying in part on the aberrant nature of the defendant's criminal conduct in finding exceptional circumstances).

In addition to the foregoing, Mr. Randolph adds the following to his argument that a variety of circumstances exist that combine to create exceptional reasons why his detention at this point would be inappropriate. If Mr. Randolph's bond is revoked and he is "stepped back" into custody now, he will be placed in a detention facility and there exists a great likelihood that he will be taken to one of the federal detention facilities in the D.C. area. By their very nature, detention facilities are high security and privileges are few and far between. Moreover, if taken to a facility outside of Kentucky, he will likely not be able to receive visitors for the next several months. He will be an out-of-district outsider, alone, in a high-security facility, and he will lose the credit the Bureau of Prisons would otherwise afford him for surrender when calculating his designation score. Those facts combine to create a punitive environment for Mr. Randolph that does not serve the public's interest or the ends of justice. Adding that reality to everything else discussed above - his peaceful character, perfect compliance on pretrial release for nearly three years, no risk of flight, does not pose a danger, unique circumstances of January 6, 2021, criminal conduct that lasted less than one minute juxtaposed against a lifetime of good behavior

– there are more than sufficient exceptional reasons to justify continuing Mr. Randolph's bond conditions.

### III. <u>CONCLUSION</u>

Mr. Randolph respectfully moves the Court to continue his bond conditions pending sentencing for all the reasons set forth more fully above.

                                                  /s/ Angela Halim
Angela Halim, Esq.,
3580 Indian Queen Lane
Suite 10A
Philadelphia, PA  19129
(215) 300-3229
angiehalim@gmail.com

## CERTIFICATE OF SERVICE

      I hereby certify that on this date, I electronically filed the foregoing with the Clerk of Court using CM/ECF.  I also certify that the foregoing is being served this day on all counsel of record, via transmission of Notices of Electronic Filing generated by CM/ECF.

                                                /s/ Angela Halim
                                         Angela Halim, Esq.

Dated:  February 7, 2024